# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

**FILED**
Dana Wilson, Clerk
United States Bankruptcy Court
Savannah, Georgia
*3:41 pm, Mar 27 2024*

In re:

RODNEY ALLEN GIBSON and
DEBORA MINERVA GIBSON,

    *Debtors.*

)
)
)
)
)
)
)
)

Chapter 7

Number <u>21-40749-EJC</u>

MARY IDA TOWNSON, United States
Trustee for Region 21,

    *Movant,*

v.

STEPHANIE K. SHEPPARD and
RECOVERY LAW GROUP, APC,

    *Respondents.*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Contested Matter

## <u>OPINION ON MOTION TO RECONSIDER ORDER</u>
## <u>GRANTING MOTION FOR SANCTIONS</u>

This Court entered an Order Granting Motion for Sanctions on August 15,

2023, based on the Court's findings that Stephanie K. Sheppard and Recovery Law

Group, APC ("Recovery Law Group") violated various provisions of the Bankruptcy

1

Code and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). (Dckt. 49). On August 28, 2023, Ms. Sheppard and Recovery Law Group filed the instant Motion to Reconsider Order Granting Motion for Sanctions (the "Motion to Reconsider"). (Dckt. 51). In 2021, Rodney Allen Gibson and Debora Minerva Gibson (the "Debtors"), who reside in Georgia, searched online for bankruptcy attorneys, found Recovery Law Group's website, and took steps to engage Recovery Law Group to file their bankruptcy case in this Court. After the Debtors signed a retainer agreement on June 30, 2021, and agreed to pay fees of $1,838.00, Recovery Law Group staff gathered the Debtors' financial records, advised them about certain aspects of bankruptcy law, and prepared their bankruptcy papers. Once those papers were ready to be filed (i.e. after the fees had been paid), Recovery Law Group had Ms. Sheppard—a Georgia attorney with her own firm—file the Debtors' Chapter 7 bankruptcy case on November 14, 2021.

In her Disclosure of Compensation of Attorney for Debtor(s) filed with the bankruptcy petition, Ms. Sheppard identified her law firm as Sheppard Legal Services, LLC, disclosed that she had been paid $1,500.00 by the Debtors for her services, and certified that she had not agreed to share such compensation with any other person outside her firm. What she did *not* disclose was that she worked for Recovery Law Group on a contract basis, that the Debtors paid $1,838.00 to

2

Recovery Law Group, and that Ms. Sheppard received from Recovery Law Group for her services in this case only $300.00.

After the Debtors each received a Chapter 7 discharge in April 2022, Mary Ida Townson, United States Trustee for Region 21, moved for sanctions against Ms. Sheppard and Recovery Law Group. The U.S. Trustee sought disgorgement of the fees paid by the Debtors, arguing that (1) Ms. Sheppard and Recovery Law Group violated the disclosure requirements of § 329(a) and Bankruptcy Rule 2016(b); (2) Ms. Sheppard and Recovery Law Group made false statements in violation of § 707(b)(4)(C) and Bankruptcy Rule 9011(b)(3); (3) the retainer agreement between the Debtors and Recovery Law Group was void and unenforceable under §§ 528(a)(1) and 526(c); (4) Ms. Sheppard and Recovery Law Group engaged in unauthorized fee-sharing in violation of § 504(a); and (5) Recovery Law Group engaged in the unauthorized practice of law in violation of O.C.G.A. § 15-19-51(a) and Rule 5.5(a) of the Georgia Rules of Professional Conduct.

At a hearing on April 11, 2023, the Court heard testimony from Mrs. Gibson and from Ms. Sheppard, and admitted into evidence six exhibits. After hearing oral argument from Ms. Sheppard and from the U.S. Trustee's staff attorney, the Court took the matter under advisement. At a continued hearing on August 10, 2023, the Court recited its findings of fact and conclusions of law in support of its decision to grant the U.S. Trustee's motion for sanctions. The Court ordered Ms. Sheppard and

3

Recovery Law Group to return the $1,838.00 paid by the Debtors. On August 15, 2023, the Court entered an order memorializing its oral ruling. Ms. Sheppard and Recovery Law Group now seek reconsideration of that order.

## I. Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference signed by then Chief Judge Anthony A. Alaimo on July 13, 1984. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A). The Court makes the following findings of fact and conclusions of law pursuant to Bankruptcy Rule 9014(c), which makes Bankruptcy Rule 7052, and hence Rule 52 of the Federal Rules of Civil Procedure (the "Federal Rules"), applicable to this matter. To the extent that any findings of fact are considered conclusions of law, they are adopted as such. To the extent that any conclusions of law are considered findings of fact, they are adopted as such.

## II. Findings of Fact

The facts in this case are largely undisputed. All citations to witness testimony refer to the April 11, 2023 hearing transcript. (Dckt. 45). All citations to exhibits refer to the exhibits admitted at that same hearing.[1] The Court takes judicial notice

---

[1] Specifically, the Court admitted into evidence Ms. Sheppard's employment contract with Recovery Law Group (Ex. "UST-1"), the Debtors' retainer agreement with Recovery Law Group (Ex. "UST-2"); the Debtors' Statement of Financial Affairs (Ex. "UST-3"); a September 2, 2021 email from Michael Reid to the Debtors (Ex. "UST-6"); a September 6, 2021 email from Michael Reid to the Debtors (Ex. "UST-7"); and Ms. Sheppard's November 10, 2021 email to the Debtors. (Ex. "UST-8").

4

of its docket in this case pursuant to Rule 201 of the Federal Rules of Evidence. *See King v. Export Dev. Can. (In re Zetta Jet USA, Inc.)*, 624 B.R. 461, 469 (Bankr. C.D. Cal. 2020) ("[T]he [c]ourt may take judicial notice of its own docket.").

A. <u>Ms. Sheppard Worked as a Part-Time Contract Attorney</u>

According to her testimony, Ms. Sheppard maintained a law practice in Atlanta, Georgia, under the name Sheppard Legal Services, LLC. (Tr. at p. 56).[2] But on October 20, 2020, presumably to supplement her sources of income, Ms. Sheppard signed an employment contract with Recovery Law Group. (Tr. at p. 47; Ex. "UST-1"). The contract was also signed by Nicholas M. Wajda on behalf of "Recovery Law Group / Wajda & Associates, P.C." (Ex. "UST-1" at p. 7). Mr. Wajda served as Recovery Law Group's managing partner. (Tr. at pp. 48-49). The employment contract described Ms. Sheppard as a "non-equity, non-voting, partner/member" of Recovery Law Group in a "part-time contract position." (Tr. at p. 46; Ex. "UST-1" at p. 2, ¶ 1(a)). Her legal services included "bankruptcy practice[] and litigation actions to be engaged in against creditors who may have violated federal and/or state consumer protection statutes[.]" (Ex. "UST-1" at p. 2).

Under the terms of the contract, Recovery Law Group permitted Ms. Sheppard to file for its clients bankruptcy cases only under Chapter 7 and Chapter 13 of the Bankruptcy Code. (Tr. at p. 49; Ex. "UST-1" at p. 4, ¶ 3(f)). Her duties in bankruptcy

---

[2] This designation refers to the transcript of the April 11, 2023 hearing. (Dckt. 45).

cases included "the final preparation of bankruptcy petitions for the client, preparing and filing motions and responsive papers as necessary and managing Chapter 7 and Chapter 13 cases," as well as appearing "at all required meetings of creditors, motion hearings, [and] confirmation hearings[.]" (Ex. "UST-1" at pp. 2-3, ℙ 1(c)).

As to compensation, the employment contract stated that Ms. Sheppard would "be paid solely on a per case basis." (Ex. "UST-1" at p. 3, ℙ 2(a)). The contract set forth the following compensation schedule:

> . . .
>
> (b) [Recovery Law Group] will pay Attorney $300.00 for each Chapter 7 case filed.
>
> (c) [Recovery Law Group] will pay Attorney $350.00 for each Chapter 13 case filed and an additional $350.00 for each Chapter 13 case, which is subsequently confirmed.
>
> (d) [Recovery Law Group] shall pay Attorney 75% of any additional and/or supplemental fee awarded in a Chapter 7 or Chapter 13 case upon receipt of the court entered fee order. [3]
>
> (e) [Recovery Law Group] shall pay Attorney a flat fee of $325.00 for any litigation matter forwarded to Attorney, which will require [Recovery Law Group's] cooperation as designated per this Agreement.

---

[3] It is not clear to the Court under what circumstances supplemental fees would ever be awarded in a Chapter 7 case.

> (f) [Recovery Law Group] shall pay Attorney $700.00 for any personal referral of a client to [Recovery Law Group] upon the filing of a bankruptcy case for that client.[4]
>
> . . .

(Ex. "UST-1" at p. 3, ¶ 2). After filing a case, Ms. Sheppard would submit an invoice to Mr. Wajda listing the case name, the case number, the jurisdiction, and the filing date. (Tr. at pp. 48-49).

Recovery Law Group handled its own marketing, and clients executed their retainer agreements directly with Recovery Law Group, without Ms. Sheppard's involvement. (Tr. at p. 46). After a client signed a retainer agreement, Recovery Law Group prepared the client's bankruptcy papers. Specifically, Ms. Sheppard testified as follows:

> Recovery functioned for me as a paralegal, for lack of a better way to describe the situation. Recovery gathered financial documents, . . . bank statements, tax returns, [and] things of that nature, and Recovery also did the basic data entry for the petitions and the schedules.
>
> Once that was done and the clients had made all required payments, then Recovery would forward me the electronic file. So I would get an electronic file with the financial documents. You know, if there were any lawsuits, child support issues like that, those documents would come over . . . as well as an electronic Best Case copy of the file.

---

[4] This case does not require the Court to determine whether Recovery Law Group has violated Rule 7.3(c) of the Georgia Rules of Professional Conduct, which states that with certain exceptions "[a] lawyer shall not compensate or give anything of value to a person or organization to recommend or secure the lawyer's employment by a client, or as a reward for having made a recommendation resulting in the lawyer's employment by a client[.]" Georgia Rules of Professional Conduct 7.3(c).

> So once I received all of that information, I would review bank statements, tax returns, and any other legal documents that came over as well and then schedule a consultation call with the client so that we could go over the petition and the schedules line by line to ensure that all of the information that they were including in there was true and correct. After that was done, then the case would be filed.

(Tr. at pp. 46-47). In short, under this arrangement Recovery Law Group had already been hired by the debtors before Ms. Sheppard became involved.

Under the terms of her employment contract, Ms. Sheppard agreed to act "pursuant to the orders, advice and direction of [Recovery Law Group] managing attorneys, partners, and senior executives"[5] and to "perform any and all reasonable duties as requested by [Recovery Law Group] customarily performed by a person holding a similar position in the legal services industry." (Ex. "UST-1" at p. 2, ¶ 1(b)). Consistent with these terms, Ms. Sheppard testified that she had no managerial or supervisory authority within Recovery Law Group. (Tr. at pp. 48, 55).

B. The Debtors Retain Recovery Law Group to File their Bankruptcy Case

As previously noted, in the summer of 2021 the Debtors searched the Internet for bankruptcy attorneys and found Recovery Law Group's website. (Tr. at p. 10). They answered an online questionnaire and received a response from Recovery Law

---

[5] It is not clear whether any such managing attorneys were licensed to practice in the State of Georgia. Neither Recovery Law Group nor Ms. Sheppard have ever so asserted.

Group via email. (Tr. at p. 10). On June 30, 2021, the Debtors electronically signed a Chapter 7 Retainer Agreement with "Recovery Law Group, APC d/b/a Wajda & Associates." (Tr. at pp. 11-12, 15; Ex. "UST-2" at p. 1). While Mrs. Gibson's name appears on the signature page, Mr. Gibson's does not. (Tr. at pp. 15, 52-54; Ex. "UST-2" at p. 3). The name "Nicholas," presumably referring to Mr. Wajda, also appears on the signature page, although the retainer agreement neither provides his surname nor discloses his relationship to Recovery Law Group. (Tr. at p. 13; Ex. "UST-2" at p. 3).

Under the terms of the retainer agreement, the Debtors agreed to pay Recovery Law Group $1,838.00, comprising $1,500.00 attorney's fees and $338.00 for the bankruptcy case filing fee. (Tr. at pp. 15-16, 57; Ex. "UST-2" at p. 1). The retainer agreement included provisions explaining reaffirmation agreements, the credit counseling requirement,[6] and the differences among Chapters 7, 11, 12, and 13 of the Bankruptcy Code. (Ex. "UST-2" at pp. 2-6). The Debtors did not receive a paper copy of the retainer agreement. (Tr. at pp. 13-14). Nor were they able to save an electronic copy: once they affixed their electronic signatures, the document was sent to Recovery Law Group and could not be retrieved on the Debtors' computer. (Tr. at pp. 14-15).

---

[6] *See* 11 U.S.C. § 109(h).

Using an online portal, the Debtors paid Recovery Law Group the $1,838.00 fee in installments over several months. (Tr. at pp. 16, 57). They also uploaded documentation, including pay stubs and tax returns, to permit Recovery Law Group to complete their schedules and statement of financial affairs. (Tr. at pp. 17-18, 24). As part of the intake process, a Recovery Law Group employee named Patricia Mulcahy advised the Debtors, by telephone and email, about the difference between secured and unsecured debts, about the exemptions available under Georgia law, and about the differences between Chapter 7 and Chapter 13. (Tr. at pp. 18-19). Ms. Mulcahy recommended that the Debtors file under Chapter 7 rather than Chapter 13.[7] (Tr. at p. 19). Recovery Law Group prepared the first draft of the Debtors' petition, schedules, statement of financial affairs, and other papers that would be used in the initial bankruptcy filing. (Tr. at p. 55).

The Debtors made the final installment payment on their $1,838.00 retainer fee on September 2, 2021. (Tr. at pp. 19-20). On that same day, the Debtors received an email purportedly from Recovery Law Group attorney Michael Reid. (Tr. at pp. 25-26). In that email, Mr. Reid explained the various documents that the Debtors were required to sign, stating as follows:

This email contains three attachments:

---

[7] The Debtors' retainer agreement with Recovery Law Group is entitled "Chapter 7 Retainer Agreement." (Ex. "UST-2" at p. 1). It is not clear from Mrs. Gibson's testimony when Ms. Mulcahy advised the Debtors to file under Chapter 7.

1. The **first attachment to this email** is the existing draft of your bankruptcy paperwork. You do not need to sign these pages. Please read through them, and see the explanation below regarding this paperwork.

2. The **second attachment** contains a list of the creditors listed in your paperwork. These creditors were pulled from our software and are the creditors that are indicated on your credit reports from the three credit bureaus. If you owe money to any additional creditors or collectors that are not indicated in this attachment, please send us a complete list with their names, addresses and amounts owed.

3. The **third attachment** contains all the signature pages of your bankruptcy paperwork that you will need to sign and return to us. Please sign, but do not date these documents. These must be mailed to us at: Recovery Law Group, 309 W 11th Street, Anderson, IN 46016

**Explanation of first attachment:**

Attached is your bankruptcy petition and schedules. Please review all documents for accuracy ESPECIALLY the Social Security Statement for your correct social security number. Also, please make sure the petition lists your full name(s) and it is spelled correctly. If there is any mistake on your name(s) or social security number, please let me know right away as you will need new paperwork.

If you have any changes to make to the paperwork, please just write directly on it and put a sticky note to draw my attention to your changes (do not worry about the numbers in Form 22 – they are based on complex formulas). The paperwork is about 45-55 pages long.

The first seven pages of the paperwork are called the **Voluntary Petition**. These pages officially open a bankruptcy case for you and provide statistical information to the court about your case. On the first page,

11

please verify that your name and any aliases, former names (used in the last 8 years), and/or names of business (used in the last 8 years) are listed and spelled correctly. Please also verify that your correct street and/or mailing address are listed. Do not worry about the statistics within these pages.

The next section contains your bankruptcy schedules. The number of pages in this section varies from filing to filing. You only need to sign at the end of this grouping (after [S]chedule J) but you want to look through these schedules and make sure everything is listed accurately:

**Summary Page:** Do not worry about these 2 pages. They are just a summary and likely will be updated later.

**Schedule A/B:** This is where we list all property that you own. At this point, we have covered these items so you are simply looking through to make sure we did not forget anything of value. Note: If your name is on title to the property, you have an ownership interest in the property and we must list it so please tell me about everything (even if you do not consider yourself as the owner). Look over these 5-6 pages and make sure we did not forget anything. If we did, or you have questions about this, please just make notes right on the schedule in a manner that will draw my attention or make a sticky note.

**Schedule C:** This section lists the exemptions used to protect your assets. You do not need to concern yourself with this section much as I will handle the exemptions. Not everything needs to be exempt ([i.e.]: if there is no equity) so do not assume there is a mistake if something is not listed with an exemption amount.

**Schedule D:** This section lists all of your secured debt. Secured debt is debt that is secured by some type of property. Examples are a home loan, car loan, equity line of credit, and debts of that nature.

12

**Schedule E/F:** This section lists all priority unsecured debt and normal unsecured debt. Priority unsecured debt is debt from taxes, domestic support obligations, and other specific debts that are rarely found in most cases. Normal unsecured debt is all credit cards, personal loans, student loans, medical bills, potential claims against you, and any other debt that you have or may have. If you [owe] money to additional creditors/collectors not listed in this schedule, please provide me with their information.

**Schedule G:** This section lists executory contracts and unexpired leases. The most common listing here is if you are leasing a vehicle.

**Schedule H:** This section lists any co-debtors, or co-signors, for any of your debt. Here is where to list anyone else that may be listed on a debt with you – whether you cosigned for them or if they cosigned for you.

**Schedule I:** This section lists your household income and allowable deductions. Please make sure that we are not missing any sources of income in this schedule. . . .

(Ex. "UST-6") (emphasis in original). On September 6, 2021, the Debtors received

another email purportedly from Mr. Reid stating as follows:

Hi Rodney & Debora,

Now that you are paid in full, we will need you to address a few items and then we will be ready to file your case. Please provide us the documents described in Email 2, sign and mail us the documents sent to you in Email 3, and complete the credit counseling course. After you've addressed these emails, please call us to verify our receipt of the required items and make sure we do not need anything further.

After we've verified our receipt of the required items with you, we can get your case prepared for filing. We will

13

complete a pre-filing review with you over the phone and then we can get your bankruptcy paperwork finalized and filed.

Thank you,

. . .

Michael Reid, Esq.
Recovery Law Group
Nationwide Bankruptcy Attorneys
Wajda & Associates

. . .

Are debt collectors harassing you? If so you may be entitled to MONEY if collection agencies are violating the law! Please call our toll free number at 866-222-8994.

(Ex. "UST-7"; Tr. at pp. 20-23). After receiving Mr. Reid's September 6, 2021 email, the Debtors mailed the requested documentation to Recovery Law Group's Indiana address mentioned in Mr. Reid's September 2, 2021 email. (Tr. at pp. 27-28).

Next, the Debtors received an email from Ms. Sheppard on November 10, 2021—their first contact with her. (Tr. at pp. 28-29). In that email, Ms. Sheppard stated as follows:

Good Afternoon Mr. and Mrs. Gibson:

I hope that all is well. My name is Stephanie Sheppard, and I am the attorney that will be filing your bankruptcy case. I would like to schedule a time for us to talk so that I can finalize your petition. I have availability tomorrow from 9:00 a.m[.] [to] 10:00 a.m. and from 1:00 p.m. to 4:00

14

p.m. Please let me know if one of these time frames works
for you. I look forward to speaking with you and helping
you navigate the bankruptcy process.

Kind regards,

. . .

Stephanie K. Sheppard, Esquire
Recovery Law Group
DBA Wajda & Associates

(Ex. "UST-8"). The next day, November 11, 2021, Mrs. Gibson, while on her way

home from work, spoke to Ms. Sheppard on the phone. (Tr. at p. 30). When Mrs.

Gibson got home, she and her husband called Ms. Sheppard back, and for about 45

minutes, they discussed the Debtors' petition, schedules, statement of financial

affairs, and other papers line-by-line. (Tr. at pp. 31-32, 47, 61). Also, as Patricia

Mulcahy of Recovery Law Group had already done, Ms. Sheppard explained to the

Debtors the difference between secured and unsecured debt, the Georgia bankruptcy

exemptions, and the differences between Chapter 7 and Chapter 13 of the

Bankruptcy Code. (Tr. at pp. 32, 36-37). Ms. Sheppard recommended Chapter 7 as

the better option for them. (Tr. at pp. 36-37).

C. Ms. Sheppard Files the Debtors' Bankruptcy Case

On November 14, 2021, three days after her telephonic conversation with the

Debtors, Ms. Sheppard filed their bankruptcy petition and other necessary papers,

and paid the $338.00 filing fee, commencing this Chapter 7 case. (Dckt. 1). It is not

clear from the record when, or whether,[8] Ms. Sheppard obtained the Debtors' wet-ink signatures on their bankruptcy papers as this Court requires.[9]

Ms. Sheppard signed the petition as Debtors' counsel but identified her firm as Sheppard Legal Services, LLC. (Dckt. 1, p. 7). The petition did not mention Recovery Law Group, but the Statement of Financial Affairs did. Specifically, question 16 of Official Form 107 asks "[w]ithin 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition?" (Dckt. 1, p. 51, Part 7, ⁋ 16). In response to that question, the box corresponding to "Yes" was checked. The person paid was identified as Recovery Law Group, the amount paid was identified at $1,838.00 representing "Attorney Fees + Filing Fee," and the date of that payment was identified as September 2, 2021.

---

[8] The September 2, 2021 email from Michael Reid instructed the Debtors to sign—but not date—their bankruptcy papers.

[9] General Order No. 2016-2 ("Electronic Case Files and Administrative Procedures") states that "[a]n attorney filing a Verified Pleading should thereafter maintain in his or her office the original Verified Pleading in its entirety for at least five (5) years after the conclusion of all appeals or the expiration of time for filing a timely appeal, whichever is later. The filing of a Verified Pleading constitutes a representation by the attorney who files it that the attorney has in his/her possession at the time of filing the fully executed original Verified Pleading and that he/she agrees to maintain it for the five (5) year period set forth above. A pleading or document that a person signs and thereby verifies, certifies, declares, affirms, or swears under oath or penalty of perjury concerning the truth of the matters set forth in that pleading or document is a 'Verified Pleading.'" General Order No. 2016-2, p. 3, ⁋ 14. *See also See In re Ruebling*, No. 15-71627, 2016 WL 6877796, at *3 (Bankr. C.D. Ill. Nov. 21, 2016) ("The electronic signatures of the Debtors affixed to the petition represented under penalty of perjury that they had signed the petition . . . and the information provided therein was true and correct.").

16

(Dckt. 1, p. 51, Part 7, ¶ 16). The address provided for Recovery Law Group was 871 Coronado Drive, Suite 200, Henderson, Nevada 89052.[10] (Dckt. 1, p. 51, Part 7, ¶ 16).

Among the papers Ms. Sheppard filed alongside the petition was her Disclosure of Compensation of Attorney for Debtor(s) (Official Form B2030). (Dckt. 1, p. 64). According to Ms. Sheppard, Recovery Law Group electronically entered the information in this form before transmitting the file to her, though she acknowledged that she signed the form electronically using her own Best Case software. (Tr. at pp. 50-51, 55-60). The form stated that Ms. Sheppard agreed to accept $1,500.00 for her legal services and that she received payment in full before filing. (Dckt. 1, p. 64, ¶ 1). That statement was not true: the Debtors paid the entire $1,838.00 to Recovery Law Group, not to Ms. Sheppard. (Tr. at p. 57).

On that same disclosure form, a box was checked corresponding to the statement "I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm."[11] (Dckt. 1, p.

---

[10] As noted, the September 2, 2021 email from Michael Reid provided an address for Recovery Law Group at 309 West 11th Street, Anderson, Indiana 46016.

[11] Official Form B2030 provides two options. Debtor's counsel may either check the box corresponding to the statement that no compensation is to be shared outside her firm, or check a different box corresponding to the statement that "I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached." (Dckt. 1, p. 64, ¶ 4). Here, the first box was checked, not the second.

17

64, ¶ 4). Like the petition, the disclosure form identified Ms. Sheppard's firm as Sheppard Legal Services, LLC and did not mention Recovery Law Group. The certification electronically signed by Ms. Sheppard stated as follows: "I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding." (Dckt. 1, p. 64; Tr. at p. 58). That statement, too, was not true: from the Debtors' $1,838.00 payment to Recovery Law Group, Ms. Sheppard received $300.00, consistent with the compensation schedule in her employment contract. (Tr. at pp. 49, 57).

As reflected by their Schedule A/B, the Debtors' primary asset was a 2019 Dodge Durango, which they valued at $27,660.[12] (Dckt. 1, p. 10, ¶ 3.1; Tr. at pp. 37-39, 43). In their Schedule D, they stated that Santander Consumer USA held a $36,024.00 claim secured by the vehicle. (Dckt. 1, p. 17, ¶ 2.1). In their Statement of Intention for Individuals Filing Under Chapter 7, the Debtors stated that they intended to retain the vehicle and to enter into a reaffirmation agreement with Santander, thus allowing the debt to Santander to survive the Chapter 7 discharge.[13] (Dckt. 1, p. 55, ¶ 1). Ms. Sheppard counseled the Debtors against entering into a reaffirmation agreement with Santander. (Tr. at pp. 40-41, 78-79). Ultimately, the

---

[12] The Debtors later filed amended schedules to include a previously undisclosed cargo trailer valued at $2,500.00. (Dckt. 19, p. 1, ¶ 4.1; Tr. at pp. 33-34). They claimed the trailer as fully exempt under O.C.G.A. § 44-13-100(a)(6). (Dckt. 19, p. 7, ¶ 2).

[13] *See* 11 U.S.C. § 524(c), (d).

Chapter 7 Trustee, Wendy A. Owens, abandoned the vehicle because it was burdensome or of inconsequential value to the bankruptcy estate.[14] (Dckt. 24).

During the Debtors' Chapter 7 case, Ms. Sheppard represented them at the telephonic § 341 meeting. (Tr. at pp. 35, 61). That meeting was first scheduled for December 21, 2021, and was continued multiple times to January 21, 2022, to February 23, 2022, and finally to March 23, 2022. (Dckt. 8, 11, 12, 13, 14, 20, 21, 23).

Ms. Sheppard filed Mrs. Gibson's financial management course certification on February 21, 2022.[15] (Dckt. 18). The Clerk entered a deficiency notice stating that "[i]n order for Rodney Allen Gibson to receive a discharge, a Financial Management Course Certification will have to be filed for him." (Dckt. 25). The Clerk later entered a second deficiency directing Mr. Gibson to file the required certification by May 11, 2022. (Dckt. 26). On April 27, 2022, the Court entered an order discharging Mrs. Gibson. (Dckt. 27). The next day, April 28, 2022, Mr. Gibson filed his financial management course certification. (Dckt. 28). He received his discharge that same day. (Dckt. 29, amended at Dckt. 30). Mrs. Gibson testified that she and her husband were satisfied with the services Ms. Sheppard provided in their bankruptcy case. (Tr. at p. 42).

---

[14] *See* 11 U.S.C. § 554(a).

[15] *See* 11 U.S.C. §§ 727(a)(11), 111.

D. The U.S. Trustee Seeks Sanctions Against Ms. Sheppard and Recovery Law Group

On February 17, 2023, the U.S. Trustee filed a motion requesting that the Court sanction Ms. Sheppard and Recovery Law Group. (Dckt. 35). In that motion, the U.S. Trustee explained that the facts surrounding Ms. Sheppard's relationship with Recovery Law Group came to light at the continued § 341 meeting on February 23, 2022. (Dckt. 35, p. 3, ¶¶ 13-14). At the U.S. Trustee's request, Ms. Sheppard submitted a copy of the Retainer Agreement.[16] (Dckt. 35, pp. 3-4, ¶¶ 15-16; Tr. at p. 52). Based on the allegations set forth in the motion, the U.S. Trustee argued that Ms. Sheppard and Recovery Law Group violated several provisions of the Bankruptcy Code and Bankruptcy Rules. (Dckt. 35, pp. 5-10, ¶¶ 23-35). The U.S. Trustee also argued that Recovery Law Group engaged in the unauthorized practice of law. (Dckt. 35, pp. 9-10, ¶¶ 32-35). In her prayer for relief, the U.S. Trustee requested that the Court "enter an order (1) voiding . . . the retention agreement between the [D]ebtors and [Recovery Law Group]; (2) disgorgement of all attorney fees; and (3) other relief as may be appropriate." (Dckt. 35, p. 10). Neither Ms.

---

[16] Ms. Sheppard testified that she had to request a copy of the Retainer Agreement from Recovery Law Group because it was not included in the package of bankruptcy documents she received from Recovery Law Group in connection with the Debtors' case. (Tr. at pp. 50, 52)

Sheppard nor Recovery Law Group filed a written response to the U.S. Trustee's motion.

A hearing on the Motion for Sanctions was scheduled for March 14, 2023, and was continued to April 11, 2023, at the parties' joint request. (Dckt. 37, 39, 41). At the continued hearing, the Court heard testimony from Mrs. Gibson and from Ms. Sheppard. The Court admitted into evidence six exhibits.[17] (Dckt. 44). After hearing oral argument from Ms. Sheppard and from counsel for the U.S. Trustee, the Court took the matter under advisement. (Tr. at pp. 70-81, 83).

At a continued hearing on August 10, 2023, the Court orally recited its findings and conclusions on the U.S. Trustee's motion for sanctions. (Dckt. 46). The Court concluded that (1) Ms. Sheppard and Recovery Law Group violated the disclosure requirements of § 329(a) and Bankruptcy Rule 2016(b); (2) Ms. Sheppard and Recovery Law Group made false statements in violation of § 707(b)(4)(C) and Bankruptcy Rule 9011(b)(3); (3) the retainer agreement between the Debtors and Recovery Law Group was void and unenforceable under §§ 528(a)(1) and 526(c); (4) Ms. Sheppard and Recovery Law Group engaged in unauthorized fee-sharing in violation of § 504(a); and (5) Recovery Law Group engaged in the unauthorized practice of law in violation of O.C.G.A. § 15-19-51(a) and Rule 5.5(a) of the Georgia

---

[17] Specifically, the parties stipulated to the admissibility of Exhibits "UST-1," "UST-2", "UST-3, and "UST-8." (Tr. at p. 7). Exhibits "UST-6" and "UST-7," both emails from Mr. Reid of Recovery Law Group, were admitted over Ms. Sheppard's objections. (Tr. at pp. 22-23, 26-27).

Rules of Professional Conduct. On August 15, 2023, the Court entered a written order memorializing its findings and conclusions and requiring Ms. Sheppard and Recovery Law Group to return to the Debtors the amount of $1,838.00. (Dckt. 49).

On August 28, 2023, Ms. Sheppard and Recovery Law Group filed the instant Motion to Reconsider. (Dckt. 51). In that motion, they argue that "they did not violate any of the provisions as cited in the Court's sanction order." (Dckt. 51, p. 2, ¶ 1). In the alternative, they request that the Court "review the [$1,838.00] sanction amount awarded as it is unjust and inequitable" because $338.00 represented the filing fee, so they only received attorney's fees of $1,500.00. (Dckt. 51, pp. 8-9, ¶¶ 31-32). The U.S. Trustee did not respond to the Motion to Reconsider, which is now ripe for ruling.

## III. <u>Conclusions of Law</u>

In their motion, Ms. Sheppard and Recovery Law Group cite Federal Rule 59(e), made applicable by Bankruptcy Rule 9023, as the basis for their request for reconsideration. Bankruptcy Rule 9023 provides that "[a] motion for a new trial or to alter or amend a judgment shall be filed, and a court may on its own order a new trial, no later than 14 days after entry of judgment."[18] Fed. R. Bankr. P. 9023. Federal

---

[18] Federal Rule 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). But in a bankruptcy case, the deadline is 14 days, not 28. *Collier on Bankruptcy* ¶ 9023.02 (16th ed. 2023) ("[M]otions under Bankruptcy Rule 9023 must be filed not later than 14 days after the entry of judgment."). Here, Ms. Sheppard and Recovery Law Group timely filed their motion within 14 days of the Court's entry of its order granting the U.S. Trustee's motion for sanctions. (Dckt. 49, 51).

Rule 59(e) "enables a district court to 'rectify its own mistakes in the period immediately following' its decision[.]" *Banister v. Davis*, 590 U.S. ---, 140 S. Ct. 1698, 1703 (2020) (quoting *White v. New Hampshire Dept. of Employment Security*, 455 U.S. 445, 450 (1982)). "In keeping with that corrective function, 'federal courts generally have [used] Rule 59(e) only' to 'reconsider[ ] matters properly encompassed in a decision on the merits.'" *Id.* (quoting *White*, 455 U.S. at 451). "[C]ourts will not address new arguments or evidence that the moving party could have raised before the decision issued." *Id.*

"[A] motion for reconsideration may only be granted if the party seeking reconsideration shows (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or fact or prevent manifest injustice." *In re Marinari*, 596 B.R. 809, 818 (Bankr. E.D. Pa. 2019). *See also In re Henning*, 420 B.R. 773, 784 (Bankr. W.D. Tenn. 2009). Here, Ms. Sheppard and Recovery Law Group do not assert any change in controlling law or availability of new evidence. Instead, they argue (1) that the Court committed clear errors of law in its analysis; and (2) that the $1,838.00 sanction was manifestly unjust.

As explained below, the Court reaffirms its conclusions that Ms. Sheppard and Recovery Law Group violated § 329(a) and Bankruptcy Rule 2016(b), that they violated § 707(b)(4)(C) and Bankruptcy Rule 9011(b)(3), that they entered into a

23

void and unenforceable retainer agreement under §§ 528(a)(1) and 526(c), and that Recovery Law Group engaged in the unauthorized practice of law. But upon further consideration, the Court now finds that it is not clear whether Ms. Sheppard and Recovery Law Group engaged in unauthorized fee-sharing in violation of § 504(a). Regardless, based on their violations of several other provisions of the Bankruptcy Code and Bankruptcy Rules, the Court will still impose a sanction on Ms. Sheppard and on Recovery Law Group. The Court agrees with them, however, that the sanction should be reduced from $1,838.00 to $1,500.00.

A. Ms. Sheppard and Recovery Law Group Violated § 329(a) and Bankruptcy Rule 2016(b)

In her Motion for Sanctions, the U.S. Trustee argued that Ms. Sheppard and Recovery Law Group made inadequate disclosures in the Disclosure of Compensation of Attorney for Debtor(s) (Official Form B2030) and thus violated § 329(a) of the Bankruptcy Code and Bankruptcy Rule 2016(b). (Dckt. 35, pp. 5-7, ¶¶ 23-26). In their Motion to Reconsider, Ms. Sheppard and Recovery Law Group argue that Ms. Sheppard was an employee—indeed, a "member or regular associate"—of Recovery Law Group when she filed the Debtors' case. They therefore contend that the disclosure form accurately reflected the Debtors' payment of $1,500.00 to Recovery Law Group and that Bankruptcy Rule 2016(b) did not

24

require them to disclose the particulars of any fee-sharing agreement. (Dckt. 51, pp. 3-5, ¶¶). The Court disagrees.

"[P]ayments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney" and thus are "subject to careful scrutiny." *In re Gorski*, 519 B.R. 67, 71 (Bankr. S.D.N.Y. 2014) (quoting *In re Ortiz*, 496 B.R. 144, 148 (Bankr. S.D.N.Y. 2013)). To that end, § 329(a) of the Bankruptcy Code provides as follows:

> (a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

11 U.S.C. § 329(a). "Bankruptcy Rule 2016(b) implements § 329(a) by requiring a debtor's attorney to file the statement required by that section within 14 days after days after the order for relief." *In re Nunez*, 598 B.R. 696, 705 (Bankr. E.D.N.Y. 2019) (quoting *In re Chatkhan*, 496 B.R. 687, 693 (Bankr. E.D.N.Y. 2012)). Specifically, that rule states as follows:

> Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the

25

> statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed.

Fed. R. Bankr. P. 2016(b). "This disclosure obligation is mandatory and not permissive[.]" *Nunez,* 598 B.R. at 705.

"Disclosure under § 329(a) and Rule 2016(b) is essential in order to facilitate the Court's ability to monitor the reasonableness of fees and to prevent overreaching by debtors' attorneys." *In re Blackburn*, 448 B.R. 28, 40 (Bankr. D. Idaho 2011). "Courts have uniformly interpreted Section 329(a) and [Rule 2016(b) to require the attorney's full and complete disclosure of any payment made by, for, or on behalf of a debtor as well as any agreement relating to compensation." *In re Dellutri Law Group*, 482 B.R. 642, 648 (Bankr. M.D. Fla. 2012). "'Coy or incomplete disclosures' are 'less than the full measure of disclosure' required under the Bankruptcy Code and Rules, even if they arise merely by way of negligence or inadvertence." *Id.* at 649 (quoting *In re Saturley*, 131 B.R. 509, 517 (Bankr. D. Maine 1991)).

26

Although nothing in the Bankruptcy Code defines the exact parameters of an employment relationship for purposes of § 329(a) and Rule 2016(b),[19] the employment contract between Ms. Sheppard and Recovery Law Group belies their contention that she was an employee of that firm, much less a member or regular associate. Although the contract described her as a "partner/member" of Recovery Law Group, it also stated that she had no equity or voting rights in the firm and that she was employed in a "part-time contract" capacity. Clients signed retainer agreements with Recovery Law Group, not with Ms. Sheppard, and Recovery Law Group paid her on a case-by-case basis.

And, as evidenced by her disclosure form, Ms. Sheppard maintained a separate law practice, Sheppard Legal Services, LLC. It is "quite unusual for one lawyer to have two competing law practices[.]" *In re Deighan Law LLC*, 637 B.R. 888, 896 (Bankr. M.D. Ala. 2022). "This aspect of the relationship alone is more consistent with the notion" that Ms. Sheppard was "hired on a contract or 'piece work" basis rather than being [a] true partner[] or regular associate[]." *Id.*

---

[19] Some courts look to the Bankruptcy Rules for guidance. *See In re Deighan Law LLC*, 637 B.R. 888, 896 (Bankr. M.D. Ala. 2022); *In re Ferguson*, 445 B.R. 744, 751-52 (Bankr. N.D. Tex. 2011). Under the Bankruptcy Rules, the term "firm" includes "a partnership or professional corporation of attorneys[.]" Fed. R. Bankr. P. 9001(6). And the term "regular associate" means "any attorney regularly employed by, associated with, or counsel to an individual or firm." Fed. R. Bankr. P. 9001(10).

Above all, *nothing* in Ms. Sheppard's disclosure form so much as hinted at her relationship with Recovery Law Group.[20] She failed to disclose that she only received $300.00 from the $1,838.00 the Debtors paid Recovery Law Group. Instead, she falsely certified that she had not agreed to share the $1,500.00 with anyone other than "members and associates of [her] law firm," which she identified as Sheppard Legal Services, LLC. In nearly identical circumstances, another bankruptcy court found that Recovery Law Group's "disclosures [fell] short of providing accurate information." *In re Burnett*, No. 21-02018-dd, 2022 WL 802586, at *9 (Bankr. D.S.C. March 16, 2022). So too here. The Court finds that Ms. Sheppard was not a member or regular associate of Recovery Law Group and that their inadequate disclosures violated § 329(a) and Bankruptcy Rule 2016(b).

B. Ms. Sheppard and Recovery Law Group Violated § 707(b)(4)(C) and Bankruptcy Rule 9011(b)(3)

According to the U.S. Trustee, Ms. Sheppard failed to investigate the Debtors' financial circumstances as required by § 707(b)(4)(C) and Bankruptcy Rule 9011(b)(3). (Dckt. 35, pp. 7-8, ¶¶ 27-29). For their part, Ms. Sheppard and Recovery Law Group assert that Ms. Sheppard "met with the clients and went over in great

---

[20] To be sure, the Debtors disclosed in their Statement of Financial Affairs their $1,838.00 payment to Recovery Law Group. But nowhere in their papers was Ms. Sheppard's employment with Recovery Law Group adequately explained.

detail the aspects, particulars, and consequences of filing a bankruptcy case." They further assert that she "reviewed the prepared petition and schedules, amended any inaccuracies or mistakes, and filed the case herself." (Dckt. 51, p. 5, ¶ 13).

Section 707(b)(4)(C) provides as follows:

> (C) The signature of an attorney on a petition, pleading, or written motion shall constitute a certification that the attorney has—
>
> > (i) performed a reasonable investigation into the circumstances that gave rise to the petition, pleading, or written motion; and
> >
> > (ii) determined that the petition, pleading, or written motion—
> >
> > > (I) is well grounded in fact[.]

11 U.S.C. § 707(b)(4)(C). A similar provision appears in Bankruptcy Rule 9011(b)(3):

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> . . .
>
> > (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

29

Fed. R. Bankr. P. 9011(b)(3). "The 'reasonable investigation' required under Section 707(b)(4)(C) is coterminous with the 'reasonable inquiry' required under Rule 9011." *Dignity Health v. Seare (In re Seare)*, 493 B.R. 158, 209 (Bankr. D. Nev. 2013). "A reasonable investigation by counsel" is "essential to the administration of the bankruptcy case because the court, the trustee, and creditors are dependent upon debtors and their counsel providing accurate and complete information in the petition and schedules[.]" *In re Beinhauer*, 570 B.R. 128, 136 (Bankr. E.D.N.Y. 2017) (quoting *In re Hanson*, No. 8-13-73855-las, 2015 WL 891669, at *6 (Bankr. E.D.N.Y. Feb. 27, 2015)).

Here, it was Recovery Law Group, not Ms. Sheppard, that gathered financial information from the Debtors. Mrs. Gibson testified that she and her husband sent their pay stubs and tax returns to Recovery Law Group. Patricia Mulcahy, a Recovery Law Group employee, recommended, based on the Debtors' financial circumstances, that they file under Chapter 7. Using the documentation the Debtors submitted, Recovery Law Group prepared the Debtors' petition, schedules, statement of financial affairs, and other papers. Based on the testimony in this case, it appears Ms. Sheppard's investigation into the Debtors' finances was limited to a 45-minute phone call three days before filing their bankruptcy petition.

The Court finds that Ms. Sheppard's investigation was objectively unreasonable. Debtor's counsel has "an affirmative duty . . . to take steps to ensure

that the client is providing complete and accurate information. *Seare*, 493 B.R. at 210. "Merely relying on what the debtor provides is insufficient." *Id.* Instead, "[t]he attorney must engage with the client and not just take a passive role[.]" *Id.* "[A]ttorneys must exercise not only supervision, but, more importantly, professional judgment that derives only through *personal involvement in the case and evaluation of the client's needs.*" *Id.* (emphasis in original). Under her contract with Recovery Law Group, Ms. Sheppard had to take her marching orders from managing attorneys who may not have been admitted to practice in Georgia. And although "there is nothing inherently wrong with consulting a client by telephone," attorneys "must meet their clients." *In re Mitchell-Fields*, No. 23-20721-GLT, 2023 WL 6396022, at *3 (Bankr. W.D. Pa. Sept. 29, 2023). Based on her limited investigation before filing this case, Ms. Sheppard violated § 707(b)(4)(C) and Bankruptcy Rule 9011(b)(3).[21]

## C. The Retainer Agreement is Void under §§ 528(a)(1) and 526(c)

In the Motion for Sanctions, the U.S. Trustee argues that the retainer agreement between the Debtors and Recovery Law Group does not materially comply with the Bankruptcy Code's debt relief agency provisions of §§ 526 and 528 for two reasons: first, that it was not signed by all the parties, and second, that it did

---

[21] Additionally, the false statements in Ms. Sheppard's Disclosure of Compensation of Attorney for Debtor(s) (Form B2030) violated § 707(b)(4)(C)(ii)(I) and Bankruptcy Rule 9011(b)(3) and thus provide an independent basis for sanctions. *See In re Brent*, 458 B.R. 444, 457 (Bankr. N.D. Ill. 2011) ("The certification in Rule 9011(b)(3) prohibits not only assertions of fact without sufficient support but also outright misstatements of fact, whether about the merits or about the case itself—so-called 'litigation facts' of which counsel has first-hand knowledge.").

not adequately account for "[w]here and to whom" the $1,838.00 flat fee would go. (Dckt. 35, pp. 8-9, ¶¶ 30-31). Ms. Sheppard and Recovery Law Group address only the U.S. Trustee's second argument, stating that the retainer agreement "specifically detail[s] the flat fee attorney fees and costs and whatever other possible fees could be charged." (Dckt. 51, p. 7, ¶ 21). At the August 10, 2023 hearing, the Court agreed with the U.S. Trustee's first argument that the lack of signatures renders the retainer agreement void and unenforceable. The court did not address the second argument regarding the adequacy of disclosures about the fee and thus need not do so here.

The Bankruptcy Code "expressly regulates attorney-client relationships and fee agreements in bankruptcy cases." *In re Siegle*, 639 B.R. 755, 758 (Bankr. D. Minn. 2022). Specifically, § 528(a) provides in pertinent part as follows:

> (a) A debt relief agency shall—
>
>> (1) not later than 5 business days after the first date on which such agency provides any bankruptcy assistance services to an assisted person, but prior to such assisted person's petition under this title being filed, execute a written contract with such assisted person that explains clearly and conspicuously—
>>
>>> (A) the services such agency will provide to such assisted person; and
>>>
>>> (B) the fees or charges for such services, and the terms of payment; [and]
>>
>> (2) provide the assisted person with a copy of the fully executed and completed contract[.]

32

11 U.S.C. § 528(a)(1). The term "debt relief agency" means, with certain exceptions, "any person who provides any bankruptcy assistance to an assisted person [as defined in § 101(3)] in return for the payment of money or other valuable consideration[.]" 11 U.S.C. § 101(12A). Under that definition, "attorneys who provide bankruptcy assistance to assisted persons are debt relief agencies[.]" *Milavetz, Gallop & Milavetz, P.A.*, 559 U.S. 229, 239 (2010). Thus, debtor's counsel must have a written contract with the client under § 528(a)(1). "Section 526 reinforces this obligation, prohibiting a bankruptcy attorney from making 'untrue or misleading' statements to a consumer debtor." *Siegle*, 639 B.R. at 758 (quoting 11 U.S.C. § 526(a)(2). "Any contract for bankruptcy assistance between a debt relief agency and an assisted person that does not comply with the material requirements" of §§ 526 and 528 "shall be void and may not be enforced by any Federal or State court or by any other person, other than such assisted person." 11 U.S.C. § 526(c)(1).

Here, Ms. Sheppard and Recovery Law Group do not dispute that they are debt relief agencies or that the Debtors are assisted persons as defined in the Bankruptcy Code. The retainer agreement, therefore, is subject to the requirements of §§ 526 and 528, and the Court finds that it fails to satisfy those requirements. On behalf of Recovery Law Group, the agreement was signed by someone identified only as Nicholas, whose surname does not appear in that document. Mrs. Gibson signed it, but Mr. Gibson did not. And the agreement made no mention of Ms.

33

Sheppard or of Sheppard Legal Services, LLC. For all three reasons, the agreement was inadequate. "A fully executed and completed contract must be signed by all the parties." *In re Negron*, 616 B.R. 583, 592 (Bankr. D.P.R. 2020). *See also In re Thomas*, --- B.R. ---, 2024 WL 628591, at \*8 (Bankr. C.D. Ill. Feb. 14, 2024) (holding local contract attorney "fail[ed] to execute a written attorney retention and fee agreement"); *Seare*, 493 B.R. at 215 (holding attorney "failed . . . to provide a 'fully executed and completed contract' because he did not sign the [r]etainer [a]greement"). Because the retainer agreement was not "fully executed and completed" under § 528(a), it is void and unenforceable under § 526(c)(1).

D. It Is Not Clear Whether Ms. Sheppard and Recovery Law Group Violated § 504(a)

Ms. Sheppard and Recovery Law Group, the U.S. Trustee argues, engaged in impermissible fee-sharing because "the services provided [were] split between two firms": Recovery Law Group and Sheppard Legal Services, LLC. (Dckt. 35, pp. 9-10, ¶ 34). For their part, Ms. Sheppard and Recovery Law Group simply repeat their argument from their analysis of § 329(a) and Bankruptcy Rule 2016(b) that Ms. Sheppard "was at all times duly employed by [Recovery Law Group] and [was] acting as an attorney of the firm in representing the Debtors." (Dckt. 51, p. 7, ¶ 24). Having reconsidered the matter, the Court is no longer certain that Ms. Sheppard and

34

Recovery Law Group violated the Bankruptcy Code's fee-sharing prohibition, but not for the reason they assert.

"Section 504 of the Bankruptcy Code imposes a prohibition against fee-splitting or the sharing of compensation in virtually all circumstances arising in a bankruptcy case." *Goldberg v. Vilt (In re Smith)*, 397 B.R. 810, 816 (Bankr. E.D. Tex. 2008). "This rather unusual proscription, which does not exist in many other areas of attorney activity, is designed to deter any expansion of the size of administrative expense claims which are granted priority under the Bankruptcy Code distribution scheme." *Id.* Put another way, "[w]henever fees or other compensation is shared among two or more professionals, an incentive may exist to adjust upward the compensation sought in order to offset any diminution to the share of either." 4 *Collier on Bankruptcy* ¶ 504.01 (16th ed. 2023). To prevent this harm, § 504(a) provides as follows:

> (a) Except as provided in subsection (b) of this section, a person receiving compensation or reimbursement under section 503(b)(2) or 503(b)(4) of this title may not share or agree to share--
>
> > (1) any such compensation or reimbursement with another person; or
> >
> > (2) any compensation or reimbursement received by another person under such sections.

11 U.S.C. § 504(a). The Bankruptcy Code provides three exceptions, only one of which arguably applies here:

35

> (b)(1) A member, partner, or regular associate in a professional association, corporation, or partnership may share compensation or reimbursement received under section 503(b)(2) or 503(b)(4) of this title with another member, partner, or regular associate in such association, corporation, or partnership, and may share in any compensation or reimbursement received under such sections by another member, partner, or regular associate in such association, corporation, or partnership.

11 U.S.C. § 504(b)(1). Thus, a § 504 violation has three elements: "(1) a person or entity was awarded compensation under § 503(b)(2) or § 503(b)(4), (2) a person or entity shared or agreed to share in the awarded compensation, and (3) the person or entity that shared the compensation does not fit within one of the statutory exceptions." *In re Bugay*, No. 8:14-bk-14854-RCT, 2021 WL 3162632, at *1 (Bankr. M.D. Fla. June 8, 2021) (quoting *Smith*, 397 B.R. at 817).

Here, as noted, Ms. Sheppard and Recovery Law Group argue that the § 504(b)(1) statutory exception applies because Ms. Sheppard was, in their view, a "member, partner, or regular associate" of Recovery Law Group and thus was entitled to share compensation with that entity. The Court rejects that argument for the same reasons set forth in its discussion of § 329(a) and Bankruptcy Rule 2016(b): Ms. Sheppard's employment contract described her as holding a non-equity, non-voting "part-time contract" position; she was paid on a case-by-case basis; and she maintained a separate law practice. *See Deighan Law*, 637 B.R. at 896. The exception of § 504(b)(1) does not apply to Ms. Sheppard.

But that is not the end of the analysis. In reciting its oral findings and conclusions, the Court stated that all three elements of § 504(a) were satisfied in this case, including the first element requiring that a person or entity receive compensation under § 503(b)(2) or § 503(b)(4). Although § 503(b)(4) did not apply in this case,[22] the Court found that § 503(b)(2) did. That section affords administrative expense status to "compensation and reimbursement awarded under section 330(a)[.]" 11 U.S.C. § 503(b)(2). The Court reasoned that § 503(b)(2) applied because Ms. Sheppard and Recovery Law Group received compensation under § 330(a)(4). That was incorrect: § 330(a)(4) applies to debtor's counsel in a Chapter 12 or Chapter 13 case, not in a Chapter 7 case such as this one.

In point of fact, it is not clear whether § 504(a) applies in a Chapter 7 case. "[C]hapter 7 attorneys are typically not paid pursuant to awards made under section 330 of the Bankruptcy Code." *In re Fair*, No. 15-33400-SGJ-13, 2016 WL 3027264, at *12 (Bankr. N.D. Tex. May 18, 2016). For that reason, it "is not crystal clear" whether "section 504 . . . generally appl[ies] in chapter 7 cases[.]" *Id. See also Collier* ¶ 504.01[1] n. 4 ("The issue of whether section 504 applies only to fees paid from the estate—and therefore whether it applies to debtor's counsel in [C]hapter 7 cases—is a matter of some controversy."). Some courts hold § 504(a) does not apply

---

[22] "Section 503(b)(4) provides administrative expense status for the cost of professional services rendered to an entity whose expenses are allowable under subsection (A), (B), (C), (D) or (E) of section 503(b)(3)," none of which apply here. *Collier* ¶ 503.11.

to an attorney who "received payment from the debtor pre-petition" and thus "did not apply for payment under §§ 330 or 503." *In re Johnson*, 411 B.R. 296, 299 (Bankr. E.D. La. 2008) (noting the "labyrinthine language" of the relevant Code sections). But at least one court has held that Chapter 7 debtors' counsel did violate § 504(a). *In re Soulisak*, 227 B.R. 77, 82-83 (Bankr. E.D. Va. 1998).

Given the uncertainty on this issue, the Court will not rely on § 504(a) as a basis for sanctioning Ms. Sheppard and Recovery Law Group. But that does not mean that they will evade sanctions altogether. "Even though attorneys for a [C]hapter 7 debtor are not paid from estate assets and are therefore [arguably] not covered by [§] 504, Rule 2016(b) nevertheless requires disclosure of fee sharing arrangements by [C]hapter 7 debtor's counsel." *Collier* ¶ 504.01[2] n. 5. *See also Johnson*, 411 B.R. at 299-303 (finding that debtor's counsel did not violate § 504(a) but *did* violate § 329(a) and Bankruptcy Rule 2016(b)). The Court find that sanctions are warranted in this case under the other theories advanced by the U.S. Trustee.

E. Recovery Law Group Engaged in the Unauthorized Practice of Law

The U.S. Trustee argues that Recovery Law Group engaged in the unauthorized practice of law because "staff at [Recovery Law Group] not licensed to practice in Georgia or admitted in the Southern District of Georgia provide[d] a substantial portion of the pre-petition services and counseling" in this case. (Dckt. 35, p. 10, ¶ 34). Ms. Sheppard and Recovery Law Group disagree, stating that Ms.

Sheppard "is a duly licensed attorney in the state of Georgia" and that she "filed the bankruptcy case as attorney of record for the Debtors" after reviewing their papers prepared by Recovery Law Group. (Dckt. 51, p. 8, ₧₧ 26-27). Notably, they did *not* identify any other lawyer with Recovery Law Group licensed to practice in the State of Georgia.[23] In any event, the Court rejects Ms. Sheppard and Recovery Law Group's contentions and finds that Recovery Law Group engaged in the unauthorized practice of law.

"When considering cases involving the unauthorized practice of law, bankruptcy courts must look to state law for guidance." *Deighan Law*, 637 B.R. at 897. In Georgia, the relevant statute states as follows:

> (a) It shall be unlawful for any person other than a duly licensed attorney at law:
>
>> (1) To practice or appear as an attorney at law for any person other than himself in any court of this state or before any judicial body;
>>
>> (2) To make it a business to practice as an attorney at law for any person other than himself in any of such courts;
>>
>> (3) To hold himself out to the public or otherwise to any person as being entitled to practice law;
>>
>> (4) To render or furnish legal services or advice;

---

[23] A search of the State Bar of Georgia's member directory reveals that Nicholas Wajda, Patricia Mulcahy, and Michael Reid—the Recovery Law Group employees mentioned at the April 11, 2023 hearing—are not licensed to practice in Georgia.

(5) To furnish attorneys or counsel;

(6) To render legal services of any kind in actions or proceedings of any nature;

(7) To assume or use or advertise the title of "lawyer," "attorney," "attorney at law," or equivalent terms in any language in such manner as to convey the impression that he is entitled to practice law or is entitled to furnish legal advice, services, or counsel; or

(8) To advertise that either alone or together with, by, or through any person, whether a duly and regularly admitted attorney at law or not, he has, owns, conducts, or maintains an office for the practice of law or for furnishing legal advice, services, or counsel.

O.C.G.A. § 15-19-51(a). The statute further prohibits "any corporation, voluntary association, or company" from performing those acts. O.C.G.A. § 15-19-51(b). *See also* Georgia Rules of Professional Conduct 5.5(a) ("A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so.").

Here, the undisputed evidence showed that Recovery Law Group employees advised the Debtors about secured and unsecured debts, about the exemptions available under Georgia law, and about the differences between Chapter 7 and Chapter 13. Mrs. Gibson testified that Patricia Mulcahy of Recovery Law Group advised the Debtors to file under Chapter 7 rather than Chapter 13. Recovery Law Group also collected financial information from the Debtors and completed their

40

bankruptcy petition, schedules, statement of financial affairs, and other necessary papers. These services, other courts have held, constitute the unauthorized practice of law. One court, for example, explained that the unauthorized practice of law includes "[d]etermining when to file bankruptcy cases, "[d]eciding whether to file a Chapter 7 or a Chapter 13" case, "[f]illing out or assisting debtors in completing forms or schedules," and [s]olicitation of financial information and preparation of schedules." *Deighan Law*, 637 B.R. at 898 (finding Chicago law firm engaged in unauthorized practice of law in Alabama even though it employed local attorneys "on a contract, piece-work basis"). The Court agrees. Recovery Law Group engaged in the unauthorized practice of law in violation of O.C.G.A. § 15-19-51(a) and Rule 5.5 of the Georgia Rules of Professional Conduct. "Recovery Law [Group]'s use of an attorney admitted before the Court to duplicate services already performed by non-admitted attorneys does not cure the unauthorized practice of law[.]" *In re Burnett*, No. 21-02018-dd, 2022 WL 802586, at *11 (Bankr. D.S.C. March 16, 2022).

F. The $1,838.00 Sanction Imposed by the Court was Calculated Incorrectly

For all the reasons discussed above, the Court finds that Ms. Sheppard and Recovery Law Group must be sanctioned, but the Court has reconsidered the *amount* of the sanction to be imposed. In the August 15, 2023 Order Granting Motion for Sanctions, the Court ordered Ms. Sheppard and Recovery Law Group "to return the

41

$1,838.00 paid by the Debtors in this case." (Dckt. 49, p. 4). But Ms. Sheppard and Recovery Law Group point out, correctly, that of the $1,838.00 paid by the Debtors, $338.00 represented the filing fee and thus "was not retained by [Recovery Law Group] or [Ms.] Sheppard." (Dckt. 51, p. 9, ¶ 32). Because the Debtors received discharges in this case, the Court agrees that Ms. Sheppard and Recovery Law Group should not be required to return to the Debtors the $338.00 filing fee. For that reason, the Court will reduce the sanction from $1,838.00 to $1,500.00.

G. Recovery Law Group's Business Model Inevitably Leads to Mischief

Finally, a few words about Recovery Law Group's business model, which appears calculated to maximize revenue and to minimize professionalism. Under that model, prospective clients communicate by telephone and email with Recovery Law Group staff, who are not attorneys licensed to practice in the State of Georgia. Recovery Law Group staff gather the clients' financial information, advise them on the appropriate Chapter under which to file, and prepare their bankruptcy petition, schedules, statement of financial affairs, and other papers. Then Recovery Law Group has a Georgia lawyer, who has no ownership interest or management authority in Recovery Law Group, file the bankruptcy case and attend the § 341 meeting. Clients in need of time-sensitive bankruptcy relief may be out of luck: the Debtors in this case signed the retainer agreement with Recovery Law Group on June 30, 2021, but did not file for bankruptcy until November 14, 2021, over four

42

months later, and more than two months after they had paid the requested fees of $1,838.00.

Courts have criticized similar business models for "foster[ing] an environment of confusion, incompetence, and apathy." *Deighan Law*, 637 B.R. at 921. Perhaps the biggest issue with [Recovery Law Group's] business model is that non-lawyer staff[,] . . . hundreds of miles away and with no effective supervision, are practicing law in bankruptcy cases" filed in the Southern District of Georgia. *Id.* at 922. It is no surprise, then, that several courts have sanctioned Recovery Law Group.[24] Regardless, the Georgia Rules of Professional Conduct require a lawyer to

---

[24] In the Northern District of Texas, Judge Larson initially scheduled a show cause hearing based on, among other things, Recovery Law Group's filing "woefully erroneous bankruptcy paperwork" and "a nonsensical plan." *In re Pearson*, No. 20-30077, 2020 WL 1845048, at *7 (Bankr. N.D. Tex. Apr. 9, 2020). After the hearing, Judge Larson ordered Recovery Law Group to disgorge its $1,500.00 unauthorized post-petition retainer and barred the firm from using local appearance counsel as a routine matter in consumer bankruptcy cases. *Pearson*, No. 20-30077-mvl13, Dckt. No. 69 (N.D. Tex. Sept. 22, 2020). In the District of South Carolina, Chief Judge Burris voided Recovery Law Group's retainer agreement, ordered it to pay an additional $1,635.00 to the debtor, and directed the clerk of court to transmit a copy of the order to the South Carolina Office of Disciplinary Counsel. *In re Green*, No. 20-03190-HB, 2021 WL 5177427, at *16-17 (Bankr. D.S.C. Nov. 3, 2021). In a separate case a few months later, Judge Duncan of the District of South Carolina voided Recovery Law Group's retainer agreement, ordered it to disgorge its fees, imposed a $25,000.00 civil penalty, and enjoined it from filing future bankruptcy cases in the District of South Carolina under its current business practices. *In re Burnett*, No. 21-02018-dd, 2022 WL 802586, at *12-13 (Bankr. D.S.C. March 16, 2022). In the Central District of Illinois, Judge Gorman denied a fee application filed by a Recovery Law Group contract attorney who forged the debtors' signatures on the petition, failed to obtain one debtor's signature on the retainer agreement, and tried to "repudiate[e] . . . the retainer agreement because . . . it was executed by a representative of Recovery Law Group other than herself[.]" *In re Thomas*, --- B.R. ---, 2024 WL 628591, at *8 (Bankr. C.D. Ill. Feb. 14, 2024). *See also In re Michael John Quinn and Nancy Elizabeth Quinn*, No. 21-02640-hb, Dckt. No. 37 (Bankr. D.S.C. March 14, 2022) (Burris, C.J.) (approving consent order requiring Recovery Law Group to return $1,835.00 to the debtors); *In re Charles Edward Leonard, Jr.*, Case No. 21-01299-hb, Dckt. No. 79, 80 (Bankr. D.S.C. May 6,

43

"provide competent representation to a client," defining competence as "the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Georgia Rules of Professional Conduct 1.1. "If the business model under which [an attorney] is employed does not allow him the means to provide competent representation, then he is obligated [to] cut ties and seek another position elsewhere." *Deighan Law*, 637 B.R. at 921-22. To her credit, Ms. Sheppard has done just that. (Tr. at p. 63).

## IV. <u>Conclusion</u>

The success of the Debtors' Chapter 7 case does not give Ms. Sheppard and Recover Law a get-out-of-jail-free card. They violated the disclosure requirements of § 329(a) and Bankruptcy Rule 2016(b). They made false statements in violation of § 707(b)(4)(C) and Bankruptcy Rule 9011(b)(3). Their retainer agreement was not fully executed as required by § 528(a)(1) and thus is unenforceable under § 526(c). And Recovery Law Group engaged in the unauthorized practice of law in violation of O.C.G.A. § 15-19-51(a) and Rule 5.5 of the Georgia Rules of Professional Conduct. The Bankruptcy Code authorizes this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Exercising this authority, the Court will

---

2022) (Burris, C.J.) (approving settlement in which Recovery Law Group agreed to return $1,006.00 to the debtor and to pay $1,006.00 to the U.S. Treasury as a civil penalty).

impose on Ms. Sheppard and Recovery Law Group a $1,500.00 sanction.[25] By separate order, the Court will grant in part and deny in part the Motion to Reconsider.

Dated at Savannah, Georgia, this 27th day of March, 2024.

Edward J. Coleman, III, Chief Judge
United States Bankruptcy Court
Southern District of Georgia

---

[25] In the Court's view, this is a nominal sanction. The U.S. Trustee did not, for example, seek to enjoin Recovery Law Group from representing debtors in this District, preferring instead to take an "incremental approach." (Tr. at p. 83).